PRIVATE HEALTHCARE SYSTEMS, INC. *v.*
ALBERT J. TORRES
(SC 17295)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued September 19, 2005—officially released May 23, 2006

*Nicholas P. Hansen*, pro hac vice, with whom were *Averi R. Miles* and, on the brief, *Sandra K. Davis*, for the appellant (plaintiff).

*Elliott B. Pollack*, with whom, on the brief, were *Michael Kurs* and *Jaclyn C. Petrozelli*, for the appellee (defendant).

*Opinion*

PALMER, J. In this certified appeal, the plaintiff, Private Healthcare Systems, Inc. (Healthcare), appeals from the judgment of the Appellate Court, which reversed the judgment of the trial court vacating an

arbitration award that reinstated the defendant, Albert J. Torres, a surgeon, to the roster of Healthcare's preferred provider network (provider network). See *Private Healthcare Systems, Inc.* v. *Torres*, 84 Conn. App. 826, 840, 855 A.2d 987 (2004). Following our granting of certification but prior to oral argument, however, Torres voluntarily resigned from the provider network. Torres contends that the present appeal must be dismissed for lack of subject matter jurisdiction because his resignation from the provider network renders the appeal moot. We agree with Torres that the appeal is moot and, therefore, must be dismissed.[1] We also conclude, however, that, for equitable reasons, the judgment of the Appellate Court must be vacated.

The following relevant facts and procedural history are set forth in the opinion of the Appellate Court. "At all times germane to this appeal, [Torres was a surgeon with staff privileges] at Charlotte Hungerford Hospital in Torrington. During a period of two weeks in January, 1998, Torres accessed credit card information from confidential patient files, which he used to make approximately twenty telephone calls to adult entertainment telephone numbers, billing those calls to the patients whose credit card numbers he had obtained. After that misconduct was discovered, Torres received a written reprimand and was fined $5000 by the state department of public health. He voluntarily surrendered his license to practice medicine in New York after an inquiry had been initiated there. He also was arrested and charged with larceny in the fifth degree, criminal impersonation and computer crime in the fifth degree. After Torres was granted accelerated rehabilitation and completed required counseling, the criminal charges against him were dismissed. He was neither discharged nor suspended from practice by the hospital or by the state.

[1] In light of our conclusion that the appeal is moot, we do not reach the merits of the appeal.

"[Healthcare] maintains a nationwide . . . provider network. In 1994, Torres signed a preferred physicians agreement with Healthcare that had the effect of permitting individuals insured through Healthcare to utilize Torres as a surgeon. The term of the contract between Torres and Healthcare was for one year, with automatically renewable successive terms. The contract contained various provisions relating to the termination of Torres from participation in the network. It also included appeal provisions available to a provider who has been terminated from participation. In 2001, in conjunction with a routine review of Torres' credentials, Healthcare learned of Torres' previous misconduct and the responses of the licensing agencies of Connecticut and New York. After Healthcare notified Torres of its intention to terminate its contract with him, Torres invoked the contract's appeal procedures, which ultimately led to an arbitration hearing.[2]

"In his award, the arbitrator ordered Healthcare to restore Torres to its provider roster, finding that Torres had been rehabilitated and that '[t]here is no evidence that he is less than an exemplary surgeon, poses any risk as a caregiver, or is likely to engage again in conduct that in January, 1998, could be described as stupid and aberrant as well as criminal.' In making that finding, the arbitrator credited testimony that, at the time of his misconduct, Torres was suffering from a temporary mental illness from which, with the assistance of counseling, he had been cured. With respect to the contract between Healthcare and Torres, the arbitrator found that even though the contract provided that either party was entitled to terminate the contract with or without cause upon written notice to the other, considerations of public policy required that the contract could only be terminated for cause. As to the parties' responsibilities under the contract, the arbitrator found that the failure

---

[2] It is undisputed that the arbitration submission was unrestricted.

of Torres to notify Healthcare of his misconduct did not constitute a material breach, but that Healthcare violated the covenant of good faith and fair dealing implicit in its agreement with Torres. Concluding that Torres 'has long since been rehabilitated and poses no risk to [Healthcare] and the community' and that '[n]o strong public policy . . . justifies terminating him,' the arbitrator overturned Healthcare's termination of its agreement with Torres and ordered that he be 'recredentialed and fully reinstated to the [Healthcare] roster' of preferred care providers." Id., 828–29. The arbitrator also ordered Healthcare to pay 60 percent and Torres to pay 40 percent of the costs of the arbitration.

"In its application to the Superior Court to vacate the arbitration award, Healthcare claimed that the award violated public policy and that the arbitrator's interpretation of the contract between Healthcare and Torres disregarded established law. Specifically, Healthcare alleged that '[t]he arbitrator's award violates Connecticut's explicit, well-defined and dominant public policy against theft, and manifestly and egregiously disregards Connecticut law.'[3]

---

[3] We note that "[j]udicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law [as] long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *Alexson* v. *Foss,* 276 Conn. 599, 611, 887 A.2d 872 (2006). Nevertheless, "[e]ven in the case of an unrestricted submission, we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418." (Internal quotation marks omitted.) Id., 612.

"In its memorandum of decision granting Healthcare's application to vacate the arbitration award, the [trial] court noted that because the submission to the arbitrator by the parties had been unrestricted, it was bound by the arbitrator's legal and factual determinations and that, under the circumstances of [the] case, the award could be vacated only if it violated a clear public policy. The court concluded that the award violated the state's clear and explicit public policy against theft as evidenced by its statutes making larceny a crime, and that the arbitrator essentially rationalized Torres' misconduct by attributing it to a temporary mental illness. Accordingly, the court [rendered judgment vacating] the arbitration award." Id., 829–30.

Torres appealed from the trial court's judgment to the Appellate Court, claiming that the trial court improperly had vacated the arbitration award because enforcement of the award did not violate any clear public policy. Id., 830. The Appellate Court agreed, explaining that, although Torres' misconduct violated this state's explicit, well-defined and dominant public policy against theft, the arbitration award itself did not violate public policy because Torres' misconduct, which occurred five years earlier, was the product of a mental illness from which Torres since had been rehabilitated. Id., 835. The Appellate Court also observed that the arbitration award comported with the public policy favoring the employment of persons who have been rehabilitated following their criminal misconduct.[4] Id., 835–36. Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case to that court with direction to deny Healthcare's applica-

---

[4] The Appellate Court also rejected Healthcare's alternative claim that the judgment of the trial court should be affirmed because the arbitrator's award ordering Torres' reinstatement constituted a manifest disregard of clearly established and applicable law. *Private Healthcare Systems, Inc.* v. *Torres*, supra, 84 Conn. App. 839–40.

tion to vacate the arbitration award.[5] Id., 840. We subsequently granted Healthcare's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly determine that the arbitrator's award reinstating [Torres] did not violate the public policy of the state?" *Private Healthcare Systems, Inc.* v. *Torres*, 271 Conn. 939, 861 A.2d 513 (2004).

While the present appeal was pending, however, Torres notified Healthcare by letter dated December 14, 2004, that he was voluntarily terminating his preferred physicians agreement with Healthcare effective ninety days from the date of the letter. Torres thereafter filed a motion to dismiss the present appeal for lack of subject matter jurisdiction on the ground that the appeal is moot because Torres "no longer seeks to contest his status with [Healthcare]."[6] Healthcare opposed Torres' motion to dismiss, contending that its appeal was not moot because: (1) Torres purported termination of the preferred physicians agreement was invalid; (2) Healthcare seeks to be relieved from the arbitrator's unfavorable division of the arbitration costs; and (3) Healthcare may suffer certain adverse consequences unless the judgment of the Appellate Court is reversed. Healthcare also filed a motion for vacatur of the judgment of the Appellate Court in the event that this court

---

[5] Judge Flynn dissented from the majority opinion of the Appellate Court, concluding that the trial court "correctly determined that the arbitrator's award, overturning the termination of the preferred physicians agreement by Healthcare and ordering that . . . Torres be recredentialed as a member of Healthcare's . . . provider network, should be set aside for contravening our [legislature's] strong public policy criminalizing and discouraging theft." *Private Healthcare Systems, Inc.* v. *Torres*, supra, 84 Conn. App. 843 (*Flynn, J.*, dissenting).

[6] In accordance with Practice Book § 67-3, Torres thereafter filed a timely notice of his intent not to file a brief in this matter. Practice Book § 67-3 provides in relevant part: "Any party whose interest in the judgment will not be affected by the appeal and who intends not to file a brief shall inform the appellate clerk of this intent prior to the deadline for the filing of the appellee's brief. . . ."

granted Torres' motion to dismiss the present appeal. We denied without prejudice Torres' motion to dismiss and Healthcare's motion for vacatur, and ordered the parties to file briefs on the issues of mootness and vacatur.

With respect to the merits of its appeal, Healthcare contends that the Appellate Court improperly reversed the judgment of trial court vacating the arbitration award as against public policy. Although Torres has not addressed the merits of Healthcare's appeal; see footnote 6 of this opinion; he renews the claim that he made in support of his motion to dismiss Healthcare's appeal, namely, that the appeal is moot because he has resigned from the provider network. With respect to Torres' mootness claim, Healthcare raises the same arguments in opposition to that claim that it made in response to Torres' motion to dismiss, including the contention that the judgment of the Appellate Court should be vacated if we conclude that Healthcare's appeal is moot.

I

We first consider Torres' claim that this appeal is moot because of his resignation from the provider network. "Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief

through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 125–26, 836 A.2d 414 (2003); see also *Wallingford* v. *Dept. of Public Health*, 262 Conn. 758, 767, 817 A.2d 644 (2003) ("courts are called upon to determine existing controversies . . . and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law" [internal quotation marks omitted]). "The determination of whether a claim has become moot is fact sensitive . . . and may include the representations made by the parties at oral argument." (Internal quotation marks omitted.) *Chimblo* v. *Monahan*, 265 Conn. 650, 655, 829 A.2d 841 (2003).

"Nonetheless, under this court's long-standing mootness jurisprudence . . . despite developments during the pendency of an appeal that would otherwise render a claim moot, the court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur. . . . [T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture . . . but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Whe[n] there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future." (Internal quotation marks omitted.) Id., 655–56; see also *Williams* v. *Ragaglia*, 261 Conn. 219, 227, 802 A.2d 778 (2002) (collateral consequences stan-

dard requires demonstration of "more than an abstract, purely speculative injury").

In the present case, Torres invoked the arbitration clause of his agreement with Healthcare for the purpose of challenging Healthcare's decision to terminate him from its provider network. Following his successful appeal to the Appellate Court from the adverse judgment of the trial court, however, and while this appeal was pending, Torres voluntarily terminated his relationship with Healthcare. Because he no longer seeks reinstatement to the provider network, there is no ongoing controversy between the parties. Consequently, there is no practical relief that this court can afford Healthcare in connection with this appeal; the dispute between Torres and Healthcare has been rendered academic by virtue of Torres' resignation from the provider network. In such circumstances, the appeal is moot and must be dismissed. See *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 267 Conn. 126–27 ("Intervening circumstances have changed the legal landscape, a controversy no longer exists between the parties and the court cannot grant the [appellant] any practical relief. [When] the question presented is purely academic, we must refuse to entertain the appeal." [Internal quotation marks omitted.]).

Healthcare nevertheless posits several reasons why Torres' resignation from the provider network does not render its appeal moot. Healthcare's first such reason is that Torres' resignation from the provider network is invalid. In support of this contention, Healthcare construes the decision of the arbitrator as concluding that neither Healthcare *nor Torres* was free to terminate the preferred physicians agreement without cause. We disagree with Healthcare's interpretation of the arbitration decision. The only issue before the arbitrator was the propriety of Healthcare's termination of its agreement with Torres, and that was the only issue that

the arbitrator decided. The arbitrator did not decide, and did not purport to decide, whether Torres could resign from the network without cause. Moreover, because Healthcare never has wavered in its contention that Torres, as a result of his misconduct, no longer is entitled to membership in its provider network, for present purposes, Healthcare cannot be heard to complain about Torres' resignation from the provider network.

The second reason that Healthcare offers in support of its contention that its appeal is not moot pertains to the arbitrator's decision that Healthcare shall bear 60 percent of the costs associated with the arbitration. In particular, Healthcare claims that a favorable resolution of its appeal would afford it the opportunity to seek reconsideration of that award. In other words, by virtue of its asserted interest in challenging the arbitrator's assessment of costs, Healthcare maintains that it has a continuing financial stake in the case that is entirely separate and distinct from its interest in having Torres removed from the provider network. We disagree with Healthcare that the appeal is not moot due to Healthcare's purported interest in challenging the arbitrator's assessment of costs against the parties. Healthcare has made no showing—indeed, at no time during the pendency of this action has Healthcare ever expressly claimed—that the arbitrator's award of costs should be vacated. Moreover, Healthcare has proffered no reason why the award of costs is subject to review on appeal given the extremely narrow grounds upon which an appellate court may overturn an arbitral award involving an unrestricted submission, such as the submission in the present case. See footnotes 2 and 3 of this opinion. In the absence of any showing or explanation by Healthcare as to why that limited aspect of the arbitrator's decision remains subject to challenge, we are com-

pelled to conclude that the issue of costs has been finally resolved as between the parties.

Healthcare also maintains that it is entitled to a determination of the merits of its appeal notwithstanding Torres' resignation from the provider network because there is a reasonable possibility that Healthcare will suffer certain adverse future consequences unless it obtains a reversal of the judgment of the Appellate Court. Specifically, Healthcare maintains that a favorable resolution of its appeal will provide it with a defense to any action that Torres might bring against Healthcare challenging the propriety of Healthcare's efforts to terminate Torres from its provider network. Healthcare also claims that, if its appeal is successful, it will have stronger grounds on which to reject any future application by Torres to rejoin the provider network. Contrary to Healthcare's claim, these proffered collateral consequences are inadequate to overcome Torres' mootness claim.

At oral argument, counsel for Torres represented that Torres has no intention of commencing any action against Healthcare arising out of Healthcare's decision to terminate him. Torres' counsel also represented that, although Torres could not make an ironclad guarantee, in view of the current landscape of the health care profession, that he never again will seek to join the provider network, Torres has no intention of doing so. In light of counsel's representations, we are persuaded that the collateral consequences identified by Healthcare simply are too remote and speculative to remove the appeal from the realm of mootness. Furthermore, to the extent that the possible adverse future consequences identified by Healthcare cannot be discounted entirely, we believe that the more appropriate way to address them is by vacating the judgment of the Appellate Court, the issue to which we now turn.

## II

We next consider Healthcare's alternate contention that the judgment of the Appellate Court should be vacated. " 'Vacatur is "commonly utilized . . . to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *United States* v. *Munsingwear, Inc.*, 340 U.S. 36, 41, 71 S. Ct. 104, 95 L. Ed. 36 (1950).' " *In re Candace H.*, 259 Conn. 523, 527 n.5, 790 A.2d 1164 (2002). In determining whether to vacate a judgment that is unreviewable because of mootness, the principal issue "is whether the party seeking relief from [that] judgment . . . caused the mootness by voluntary action. . . . A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment. . . . The same is true when mootness results from unilateral action of the party who prevailed below." (Citations omitted.) *U.S. Bancorp Mortgage Co.* v. *Bonner Mall Partnership*, 513 U.S. 18, 24–25, 115 S. Ct. 386, 130 L. Ed. 2d 233 (1994).

Nevertheless, our law of vacatur, though scanty; *State* v. *Singleton*, 274 Conn. 426, 439, 876 A.2d 1 (2005); recognizes that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." (Internal quotation marks omitted.) *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 272–73, 659 A.2d 148 (1995). Thus, "[i]t is the [appellant's] burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate . . . equitable entitlement to the extraordinary remedy of vacatur." (Internal quotation marks omitted.) Id., 273.

We conclude that vacatur of the Appellate Court judgment is appropriate in the present circumstances. Tor-

res unilaterally caused the issue in dispute to become moot upon voluntarily severing his ties with the provider network, and he did so only after securing a favorable judgment in the Appellate Court. Healthcare bears no responsibility for its appeal becoming moot, and it now is unable, due to Torres' unilateral conduct, to challenge the adverse judgment of the Appellate Court.

Moreover, there remains the possibility, however remote, that Torres could change his mind and either bring an action against Healthcare for terminating him or seek to rejoin the provider network. See part I of this opinion. Although the representations of Torres' counsel have caused us to conclude that these eventualities are highly unlikely; see id.; they cannot be discounted entirely, and we therefore are free to consider them in determining whether equity requires that the Appellate Court judgment be vacated so that Torres could not, under any future scenario, use that judgment as a sword against Healthcare. See *American Family Life Assurance Co. of Columbus* v. *Federal Communications Commission*, 129 F.3d 625, 631 (D.C. Cir. 1997) ("Once we pass from the issue of mootness to the issue of remedy, we still may encounter some lingering though remote possibility of residual collateral harm . . . . Recourse to the 'equitable tradition of vacatur' may be warranted, then, partly because it eliminates that possibility altogether. . . . [Thus] [i]t may . . . be 'speculative' whether leaving the [judgment] standing could cause some residual harm, but vacating the [judgment] puts the speculation to rest." [Citations omitted.]).

Under all of the circumstances, therefore, we conclude that it would be unfair to Healthcare to bind it to a judgment that it has challenged in this court but, due solely to Torres' actions, it now cannot contest. We also do not believe that any public interest in permitting the judgment of the Appellate Court to stand out-

weighs the equitable interests that will be served by vacating that judgment. Accordingly, we conclude that the judgment of the Appellate Court must be vacated.[7]

The appeal is dismissed and the judgment of the Appellate Court is vacated.

In this opinion the other justices concurred.

[7] Our decision to vacate the judgment of the Appellate Court leaves intact the judgment of the trial court, which is favorable to Healthcare.