******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE YASSELL B.*
(AC 44478)

Prescott, Alexander and DiPentima, Js.

*Syllabus*

The petitioner, the Commissioner of Children and Families, filed a neglect petition and a motion for an order of temporary custody, alleging that the respondent mother had abused her minor child. The respondent father, B, who was divorced from the mother, was named as the father on the child's birth certificate, and the child was identified in the dissolution judgment rendered in New York as a child of the respondents' marriage. C claimed to be the child's father, and the commissioner filed a motion to adjudicate the paternity of the child. Although a previous paternity test had indicated a 99.99 percent probability that C was the child's father, the New York family court, which was not presented with the results of that test, dismissed an action C brought to establish his paternity of the child, thereby leaving in place the dissolution court's adjudication that the child was a child of the respondents' marriage. The court here issued a ruling on the commissioner's motion to adjudicate paternity, concluding that the paternity determinations by the state of New York should be afforded full faith and credit and declining to disturb the New York findings that B was the child's father. The court also determined that C was not the child's legal father and dismissed C as a party to the neglect proceeding, after which the court adjudicated the child as abused and ordered a period of protective supervision. C thereafter appealed to this court. During the pendency of C's appeal, the underlying neglect proceeding was resolved, the child was returned to the mother and the period of protective supervision expired. *Held* that C's appeal was dismissed as moot, as there was no actual controversy from which the adjudication of the child's paternity would afford C any practical relief: the trial court addressed the issue of paternity only to determine which parties had cognizable interests at stake in the neglect proceeding, and, in light of the termination of that proceeding, no orders would be issued that could affect C's alleged interest in or relationship to the child; moreover, vacatur of the paternity judgment was appropriate, as C did not cause the appeal to become moot through any voluntary action, he was not permitted to participate in the neglect proceeding after the court ruled on the motion to adjudicate the child's paternity, and it would be unfair to bind him to a judgment that he challenged but, through no fault of his own, could not contest; furthermore, vacatur was appropriate to prevent legal consequences from spawning as a result of the court's determination to afford the New York paternity adjudications full faith and credit as well as the court's conclusion that C is not the legal father of the child.

Argued September 9—officially released November 22, 2021**

*Procedural History*

Petition by the Commissioner of Children and Families to adjudicate the respondents' minor child abused, brought to the Superior Court in the judicial district of New Britain, Juvenile Matters, where the court, *Huddleston, J.*, denied the motion of Carlos G. to intervene; thereafter, the court issued a ruling on the petitioner's motion to adjudicate the paternity of the minor child; subsequently, the respondent mother was presented to the court on a plea of nolo contendere to the charge of abuse; thereafter, the court adjudicated the minor child as abused and issued an order of protective supervision, and Carlos G. appealed to this court. *Appeal dismissed*; *judgment vacated.*

*James P. Sexton*, assigned counsel, with whom was *John R. Weikart*, assigned counsel, for the appellant (Carlos G.).

*Joshua D. Michtom*, assistant public defender, for the appellee (respondent father Daniel B.).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Clare E. Kindall*, solicitor general, and *Evan M. O'Roark*, assistant attorney general, for the appellee (petitioner).

*Opinion*

PER CURIAM. In this neglect proceeding, Carlos G. appeals from the judgment of the trial court on the motion to adjudicate the paternity of Yassell B. filed by the petitioner, the Commissioner of Children and Families (commissioner), in which the court determined that he was not the legal father of Yassell and dismissed him as a party to the neglect proceeding.[1]

On appeal, Carlos G. claims that the trial court improperly (1) afforded full faith and credit to the prior judgments regarding paternity rendered in New York (New York judgments), (2) applied the doctrines of res judicata and collateral estoppel to give the New York judgments preclusive effect, and (3) concluded that it was in the best interest of Yassell that the respondent Daniel B. remain the legal father of Yassell. Before this court, Daniel B. argued that the appeal has become moot due to the resolution of the underlying child protection action, which included a motion for an order of temporary custody and a neglect petition alleging that Yassell had been abused by the respondent Matilde F. We ordered the parties to submit supplemental briefs specifically addressing whether (1) Carlos G.'s claim was moot due to the resolution of the underlying child protection action and (2) vacatur of the paternity determination would be an appropriate remedy. After considering the parties' supplemental briefs and the record in this case, we conclude that Carlos G.'s claim is moot and vacatur is appropriate.

The following facts, as found by the trial court, and procedural history are relevant. The respondents, Matilde F. and Daniel B., "were married for a number of years and resided in New York. They have a daughter, Shairi, who was born in 2005. Yassell was born in 2011, while [Matilde F.] and [Daniel B.] were married. [Daniel B.] is named as father on Yassell's birth certificate. . . . On October 12, 2012, [Matilde F.] and [Daniel B.] were divorced. The judgment of divorce issued by the New York Supreme Court . . . identified Shairi and Yassell as the 'children of the marriage' and awarded sole custody to [Matilde F.]. [Daniel B.] was awarded reasonable rights of visitation and ordered to pay child support for the two children . . . .

"In June, 2015, a DNA [paternity] test was conducted by [Laboratory Corporation of America] in Hempstead, N.Y. . . . The report states that [Carlos G.] and Yassell were tested on June 2, 2015, and the results rendered on June 10, 2015, indicate a 99.99 percent probability that [Carlos G.] is Yassell's father.

"On April 4, 2016, [Carlos G.] commenced a paternity action in New York Family Court, seeking to establish his paternity of Yassell. According to the 'Decision and Order after Fact Finding' rendered in that proceeding . . . a hearing was conducted on [Carlos G.'s] petition

. . . ." In that proceeding, DNA evidence of paternity was not presented to the court for its consideration. "At the conclusion of the hearing, based on the application of New York statutes and the court's findings as to the credibility of witnesses, the court found that [Carlos G.] had failed to meet his burden of proof because he failed to present clear and convincing evidence to rebut the presumption of legitimacy. The court dismissed [Carlos G.'s] paternity petition, leaving in effect the adjudication of the New York Supreme Court that Yassell was a 'child of the marriage' of [the respondents]."

In 2017, Matilde F., Shairi and Yassell moved to Connecticut where they lived with Carlos G. On September 18, 2020, the commissioner instituted the underlying neglect action by filing a motion for an order of temporary custody and a petition alleging that Matilde F. had abused Yassell. The court, *C. Taylor, J.*, granted the commissioner's motion and vested temporary custody of Yassell in the commissioner. On September 25, 2020, the trial court, *Huddleston, J.*, held a preliminary hearing on the order of temporary custody, at which both Carlos G. and Daniel B. appeared and claimed to be the father of Yassell. On September 29, 2020, the commissioner filed a motion to adjudicate paternity of Yassell. The commissioner argued that paternity should be determined prior to addressing the merits of the contested order of temporary custody to determine who should participate in that proceeding. During the pendency of the neglect proceeding, both the respondents, Matilde F. and Daniel B., and Carlos G. had weekly supervised visits with Yassell.

The court held a hearing on the commissioner's motion to adjudicate paternity on September 30 and November 9 and 23, 2020. On November 25, 2020, the court issued its ruling on the motion to adjudicate paternity. The court concluded that the "paternity determinations by the state of New York should be afforded full faith and credit[2] and that the New York findings that [Daniel B.] is Yassell's father should not be disturbed." (Footnote added.) The court also concluded, in the alternative, that, even if it did not give the New York paternity adjudication full faith and credit, "the court finds that it is in Yassell's best interest to preserve the parent-child relationship with [Daniel B.] that has existed since his birth. . . . [Carlos G.] is hereby dismissed as a party to the proceeding." This appeal followed.

Additionally, on November 25, 2020, the trial court accepted the plea of nolo contendere entered by Matilde F. to the allegations of abuse and adjudicated Yassell as abused and ordered a period of protective supervision, which terminated on March 25, 2021. Hence, during the pendency of this appeal, the underlying neglect proceeding was resolved and Yassell was returned to the

custody of Matilde F. Having considered the entirety of the record, including the supplemental briefs of the parties, we conclude that Carlos G.'s claim is moot.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction. . . . [A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *In re Naomi W.*, 206 Conn. App. 138, 143, 258 A.3d 1263, cert. denied, 338 Conn. 906, 258 A.3d 676 (2021). "It is a [well settled] general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *In re Forrest B.*, 109 Conn. App. 772, 775, 953 A.2d 887 (2008).

We conclude that the appeal before us is moot because there is no actual controversy from which this court can grant any practical relief to Carlos G. Carlos G.'s appeal of the trial court's determination of paternity arose out of a neglect proceeding. The court addressed the issue of paternity only in order to determine which parties had cognizable interests at stake in that proceeding. During the pendency of this appeal, however, the underlying neglect proceeding was resolved. Yassell has been returned to the custody of his mother, Matilde F., and the period of protective supervision has expired. As a result, adjudicating the paternity of Yassell *in the context of this case* will afford Carlos G. no practical relief because, in light of the termination of this neglect proceeding, no orders will be issued that could affect Carlos G.'s alleged interest in or relationship to Yassell. Thus, there is no actual controversy from which this court can grant practical relief. See *In re Alba P.-V.*, 135 Conn. App. 744, 746–47, 42 A.3d 393 (dismissing appeal as moot when, during pendency of appeal from trial court's judgment adjudicating children neglected and ordering period of protective supervision, period of protective supervision expired), cert. denied, 305 Conn. 917, 46 A.3d 170 (2012).

Having concluded that this appeal is moot, we next must determine whether vacatur of the underlying Connecticut paternity judgment is appropriate. "Vacatur is commonly utilized . . . to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences. . . . In determining whether to vacate a judgment that is unreviewable because of mootness, the principal issue is whether the party seeking relief from [that] judgment . . . caused the mootness by vol-

untary action. . . . A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment. . . . The same is true when mootness results from unilateral action of the party who prevailed below. . . . Nevertheless, our law of vacatur, though scanty . . . recognizes that [j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur. . . . Thus, [i]t is the [appellant's] burden, as the party seeking relief from the status quo of the [trial court] judgment, to demonstrate . . . equitable entitlement to the extraordinary remedy of vacatur." (Internal quotation marks omitted.) *Thornton* v. *Jacobs*, 339 Conn. 495, 502, A.3d (2021); see also *In re Emma F.*, 315 Conn. 414, 430–31, 107 A.3d 947 (2015).

It is clear that Carlos G. did not cause this appeal to become moot through any voluntary action. After the court issued its ruling on the commissioner's motion to adjudicate the paternity of Yassell, Carlos G. was not permitted to participate in the underlying neglect action and took no further part in those proceedings. Vacatur is appropriate to prevent legal consequences from spawning as a result of the trial court's determination that the New York judgment should be afforded full faith and credit and its ultimate conclusion that Carlos G. is not the legal father of Yassell.[3] In this appeal, Carlos G. has argued that the court's conclusions regarding these issues were improper. Therefore, because we substantively will not address a moot issue, we conclude that it would be unfair to Carlos G. to bind him to a judgment that he has challenged but, through no fault of his own, cannot contest. See *Private Healthcare Systems, Inc.* v. *Torres*, 278 Conn. 291, 304, 898 A.2d 768 (2006). Accordingly, we conclude that vacatur of the court's paternity decision is appropriate in this circumstance.

The appeal is dismissed and the judgment of the trial court regarding the paternity of Yassell B. is vacated.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** November 22, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] At the outset, we note that the court's paternity determination constitutes an appealable final judgment. "The right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . Because our jurisdiction over appeals, both criminal and civil, is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Citation omitted; internal quotation marks omitted.) *In re Marcquan C.*, 202 Conn. App. 520, 528, 246 A.3d 41, cert. denied, 336 Conn. 924, 246 A.3d 492 (2021). In *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), our Supreme Court

articulated the standard for determining when an otherwise interlocutory order is immediately appealable. It permits appeals from such orders "in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31.

Applying the second *Curcio* prong in *Madigan* v. *Madigan*, 224 Conn. 749, 620 A.2d 1276 (1993), our Supreme Court held that "a temporary order of custody is a final judgment for the purpose of an immediate appeal because a parent's custodial rights during the course of dissolution proceedings cannot otherwise be vindicated at any time, in any forum." Id., 754–55. In the present case, upon the court's paternity determination, Carlos G. was dismissed from the neglect proceeding. Following the court's order, he was unable to assert rights that would have been afforded him had he remained a party to that action and those rights were concluded so that further proceedings could not affect them. Thus, an immediate appeal was the only reasonable method of ensuring that the important rights surrounding his parent-child relationship were adequately protected. See id., 757.

[2] The full faith and credit clause of the constitution of the United States, article four, § 1, requires that the judicial proceedings of a state be given full faith and credit in every other state. "The judgment rendered in one state is entitled to full faith and credit only if it is a final judgment . . . ." (Internal quotation marks omitted.) *Krueger* v. *Krueger*, 179 Conn. 488, 490, 427 A.2d 400 (1980).

[3] We recognize that there are instances in which both our Supreme Court and this court have declined to use the remedy of vacatur to vacate the judgment of a trial court, stating that a trial court's decision is not binding precedent. See *In re Emma F.*, supra, 315 Conn. 433; *In re Angela V.*, 204 Conn. App. 746, 760–62, 254 A.3d 1042, cert. denied, 337 Conn. 907, 252 A.3d 365 (2021). However, on the basis of these facts and circumstances, vacatur of the trial court's judgment will ensure Carlos G. is not precluded from relitigating the issues raised in this appeal should he want to do so in the future. See *State* v. *Charlotte Hungerford Hospital*, 308 Conn. 140, 146 and n.8, 60 A.3d 946 (2013) (vacating decisions of appellate and trial courts and stating that "[v]acatur of the trial court judgment will further aid in the antipreclusionary aspect of the vacatur remedy"); *Private Healthcare Systems, Inc.* v. *Torres*, 278 Conn. 291, 304, 898 A.2d 768 (2006) ("Once we pass from the issue of mootness to the issue of remedy, we still may encounter some lingering though remote possibility of residual collateral harm . . . . Recourse to the equitable tradition of vacatur may be warranted, then, partly because it eliminates that possibility altogether. . . . [Thus] [i]t may . . . be speculative whether leaving the [judgment] standing could cause some residual harm, but vacating the [judgment] puts the speculation to rest." (Internal quotation marks omitted.)), quoting *American Family Life Assurance Co. of Columbus* v. *Federal Communications Commission*, 129 F.3d 625, 631 (D.C. Cir. 1997).