******************************************************

    The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Bright, C. J., and Alexander and Lavery, Js.

*Syllabus*

The respondent mother, whose minor child, R, was adjudicated neglected
and committed to the custody and care of the petitioner, the Commis-
sioner of Children and Families, appealed to this court from the trial
court's judgment, claiming that the court improperly found that R had
been neglected, and that the Department of Children and Families had
made reasonable efforts to prevent R's removal. After the mother had
filed the present appeal, counsel for R filed a motion to revoke commit-
ment in the trial court on the basis that R had returned home to the
mother, who had moved to Massachusetts, and no longer wanted to be
in the petitioner's custody. The trial court thereafter granted the motion
to revoke commitment and closed the case, returning R to the care and
custody of the mother. Subsequently, the petitioner moved to dismiss
this appeal as moot, claiming that this court could not afford the mother
any practical relief in light of the trial court's order revoking commitment
of R. In her opposition, the mother acknowledged that the second issue
on appeal, R's commitment to the petitioner, had been rendered moot
but claimed that the first issue, the adjudication of neglect, was not
moot because the mother could experience collateral consequences in
Massachusetts as a result thereof, as the adjudication of neglect could
be used against her in a future child protection proceeding in Massachu-
setts to establish a pattern of repeated parental neglect. The petitioner
responded that there was no reasonable possibility that prejudicial con-
sequences would occur for the mother as a result thereof because R
no longer lived in Connecticut, would soon reach the age of majority,
and the juvenile court would lose jurisdiction over her at that time. *Held*
that the respondent mother's appeal was dismissed as moot, there being
no practical relief that this court could afford the mother on the issue
of adjudication of neglect given that the underlying case had been closed
and R had been returned to the care and custody of her mother; more-
over, vacatur of the trial court's judgment was appropriate in order to
avoid the possibility, however remote, of collateral consequences to the
mother in Massachusetts, the adjudication of neglect was adverse to
the mother, the mother did not cause the appeal to be moot through
any voluntary action, and she was prevented from challenging the court's
adjudication of neglect as a result of the trial court's granting the motion
to revoke commitment.

Considered April 18—officially released May 16, 2022**

*Procedural History*

Petition by the Commissioner of Children and Fami-
lies to adjudicate the respondents' minor child neglected,
brought to the Superior Court in the judicial district of
Windham, Child Protection Session at Willimantic, and
tried to the court, *Carbonneau, J.*; judgment adjudicat-
ing the minor child neglected and committing the minor
child to the custody of the petitioner, from which the
respondent mother appealed to this court. *Appeal dis-
missed; judgment vacated.*

*Matthew C. Eagan*, filed a brief for the appellant
(respondent mother).

*Jillian N. Hira*, assistant attorney general, *William
Tong*, attorney general, and *Evan M. O'Roark*, assistant
attorney general, filed a brief for the appellee (peti-
tioner).

*Opinion*

PER CURIAM. In this neglect proceeding, the respondent mother, Michelle K., appeals from the judgment of the trial court adjudicating Rabia K., the respondent's minor daughter, neglected and committing her to the care and custody of the petitioner, the Commissioner of Children and Families.[1] On appeal, the respondent claims that the court improperly found that (1) Rabia had been neglected and (2) the Department of Children and Families (department) made reasonable efforts to prevent Rabia's removal.

After this appeal was ready for argument, Rabia's attorney filed in the trial court a motion to revoke commitment, representing that Rabia had returned home to the respondent in Massachusetts and no longer wanted to be in the custody of the petitioner. After a hearing, the court granted the motion to revoke commitment and closed the case. The petitioner did not oppose the motion and, thereafter, moved to dismiss this appeal as moot, arguing that this court is unable to grant the respondent any practical relief in light of the trial court's order revoking commitment of Rabia. The respondent opposed the motion to dismiss, and this court, sua sponte, ordered the parties to file supplemental memoranda giving reasons, if any, why we should not dismiss this appeal as moot and exercise the remedy of vacatur as to the trial court's judgment adjudicating Rabia neglected so as to avoid any possible collateral consequences as a result of the appeal being rendered moot. After considering the motion to dismiss and opposition thereto, as well as the parties' supplemental memoranda, we conclude that the respondent's claims are moot and that vacatur is appropriate.

The record discloses the following relevant facts, as found by the court, and procedural history. Rabia's family moved from Massachusetts to Connecticut in 2016. On July 1, 2020, Rabia, who was fifteen years old, walked into the Willimantic Police Department and reported that her family had abused her for years. She informed the police officers that she did not recall attending public school and that she had not seen a doctor since she was eleven years old. After being alerted by the Willimantic Police Department, the petitioner filed a neglect petition on July 30, 2020, alleging that Rabia was being denied proper care and allowed to live under conditions injurious to her well-being. In May, 2021, the respondent was evicted from her residence in Willimantic and moved to Massachusetts, where she previously had resided.

On May 13, 2021, the court, *Chaplin*, *J.*, granted the petitioner's motion for an order of temporary custody and issued an ex parte order vesting temporary custody of Rabia in the petitioner. The court, *Carbonneau*, *J.*, held a consolidated hearing on the motion for an order

of temporary custody and the neglect petition over the course of several days, beginning on August 9, 2021. On August 30, 2021, the last day of the hearing, the court issued its oral decision, adjudicating Rabia neglected and committing her to the care and custody of the petitioner. The court stated: "When a fifteen year old walks alone into a police station and makes allegations of physical abuse, educational . . . medical, and emotional neglect, there is a serious problem. Again, I'm not accusing the parents of anything at this point; that's beside the point. Either the girl is suffering terrible abuse at the hands of her family, or she is making false or exaggerated accusations that implicate her mental health. Either way, these are conditions and circumstances injurious to her health, both physical and mental." The court also vacated the order of temporary custody. This appeal followed, challenging both the finding of neglect and the commitment of Rabia to the petitioner.

On March 2, 2022, the court, *Chaplin, J.*, granted Rabia's motion to revoke commitment and closed the case, returning Rabia to the care and custody of the respondent. The petitioner subsequently moved to dismiss this appeal as moot. In her opposition to the motion to dismiss, the respondent acknowledged that the second issue on appeal, Rabia's commitment to the petitioner, had been rendered moot but claimed that the first issue, the finding of neglect, is not moot because she will face collateral consequences in Massachusetts as a result of the court's adjudicating Rabia neglected.[2]

"Mootness is an exception to the general rule that jurisdiction, once acquired, is not lost by the occurrence of subsequent events." *In re Alba P.-V.*, 135 Conn. App. 744, 747, 42 A.3d 393, cert. denied, 305 Conn. 917, 46 A.3d 170 (2012). "Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . .

"[D]espite developments during the pendency of an appeal that would otherwise render a claim moot, the court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur. . . . [T]o invoke successfully the collateral consequences doctrine, the liti-

gant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture . . . but need not demonstrate that these consequences are more probable than not. . . . Whe[n] there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future." (Citations omitted; internal quotation marks omitted.) *Private Healthcare Systems, Inc.* v. *Torres*, 278 Conn. 291, 298–99, 898 A.2d 768 (2006).

Because the underlying case has been closed and Rabia has been returned to the care and custody of the respondent, an actual controversy no longer exists. See *In re Kiara R.*, 129 Conn. App. 604, 610, 21 A.3d 883 (2011) (appeal rendered moot after minor child returned to respondent mother's care and custody). The respondent, however, contends that the appeal is not moot because there is a reasonable possibility that an adjudication of neglect could be used against her in a future child protection proceeding in Massachusetts. Specifically, she argues that the adjudication of neglect may be used against her in Massachusetts to establish a pattern of repeated parental neglect. Therefore, according to the respondent, "if the neglect adjudication were reversed, the respondent . . . would be able to argue that the state would be precluded from raising such an adjudication—and the facts used to support it—in any subsequent child protection case." The petitioner, noting that Rabia will turn eighteen years old in October of this year, responds that "there is no reasonable possibility that prejudicial collateral consequences will occur for [the respondent] as a result of the neglect adjudication . . . given that Rabia no longer lives in Connecticut and will soon reach the age of majority." The petitioner further notes that the juvenile court will lose jurisdiction over her at that time.

We are not persuaded that the respondent has established that there is a reasonable possibility that the underlying adjudication of neglect will result in prejudicial collateral consequences to her. Specifically, the respondent fails to address why there is a reasonable possibility that a future child protection proceeding would be initiated in Massachusetts in light of Rabia's age. Although an appellant is not required to establish that these consequences are more probable than not, there must be "more than mere conjecture . . . ." (Internal quotation marks omitted.) *Private Healthcare Systems, Inc.* v. *Torres*, supra, 278 Conn. 299. Nevertheless, under the unique circumstances of the present case, we conclude that vacatur is appropriate in order to avoid the possibility—however remote—of collateral consequences for the respondent in Massachusetts.

"Vacatur is commonly utilized . . . to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences. . . . In determining whether to vacate a judgment that is unreviewable because of mootness, the principal issue is whether the party seeking relief from [that] judgment . . . caused the mootness by voluntary action. . . . A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." (Internal quotation marks omitted.) *In re Yassell B.*, 208 Conn. App. 816, 823, 267 A.3d 816 (2021), cert. denied, 340 Conn. 922, 268 A.3d 77 (2022).

In the present case, the judgment adjudicating Rabia neglected was adverse to the respondent. As a result of the court's granting Rabia's motion to revoke commitment, which we have concluded rendered the respondent's appeal moot, the respondent, through no fault of her own, has been prevented from challenging the court's adjudication of neglect. Neither the respondent nor the petitioner opposes vacatur under these circumstances. Accordingly, we dismiss this appeal as moot and vacate the judgment of the court. See *Savin Gasoline Properties, LLC* v. *Commission on City Plan of Norwich*, 208 Conn. App. 513, 515, 262 A.3d 1027 (2021) (dismissing appeal and granting appellant's motion for vacatur of court's judgment because appeal became moot through no fault of appellant).

The appeal is dismissed and the judgment is vacated.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** May 16, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The respondent father, Ali K., also was named in the neglect petition and appeared in the trial court, but he did not file an appeal. We therefore refer in this opinion to the respondent mother as the respondent.

[2] It is well established that "[a]n adjudication of neglect relates to the status of the child and is not necessarily premised on parental fault. A finding that the child is neglected is different from finding who is responsible for the child's condition of neglect. . . . [T]he adjudication of neglect is not a judgment that runs against a person or persons so named in the petition; [i]t is not directed against them as parents, but rather is a finding that the children are neglected . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *In re Zamora S.*, 123 Conn. App. 103, 108–109, 998 A.2d 1279 (2010). At the same time, however, this court has explained that, "[a]lthough a court is not required to determine who was responsible for the neglect in adjudicating neglect of a child; see General Statutes § 46b-129; that is not to say that a court's subordinate factual findings cannot clearly identify who is responsible." *Matthew C.* v. *Commissioner of Children & Families*, 188 Conn. App. 687, 711, 205 A.3d 688 (2019).

In the present case, the respondent argues that the court found that she was at fault when it stated that she was "either unwilling or unable to provide the level of care that [Rabia] clearly needed . . . ." We agree that the court found the respondent responsible for the neglect of Rabia.